FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2009 NOV 25  PM 1: 17

CLERK, US. DISTRICT COURT
OCALA, FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE NO.    5:09-Cr - 53-OC-22-GRJ
                                                  18 U.S.C. § 371
RONALD S. SCHLOM
    and
ROSEANN COOK-SCHLOM

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy)

**A. Introduction**

At all times relevant to this Information:

1.   Defendants RONALD S. SCHLOM and ROSEANN COOK-SCHLOM resided in Ocala, Florida, and operated a business known as R. COOK & COMPANY, INC. and an internet website known as RCOOKCO.COM out of their home in Ocala, Florida which they purchased on March 14, 2003.

2.   The Endangered Species Act, Title 16, United States Code, Section 1538, made it unlawful to: (1) deliver, receive, carry, transport, or ship in interstate or foreign commerce any endangered species in the course of a commercial activity; (2) sell or offer for sale in interstate or foreign commerce any endangered species; and (3) violate any regulation pertaining to any endangered or threatened species of wildlife.

3.   Title 50, Code of Federal Regulations, Part 17.11, which is a regulation promulgated under authority of the Endangered Species Act, set forth a list of species of

wildlife that had been determined to be endangered or threatened. Jaguar (*Panthera onca*), leopard (*Panthera pardus*), ocelot (Felis pardalis), snow leopard (*Panthera uncia*), cheetah (*Acinonyx jubatus*), and tiger (*Panthera tigris*) were all endangered species. All of these species of wildlife, with the exception of ocelot, were listed in Appendix I to the Convention on International Trade in Endangered Species of Wild Fauna and Flora.

4. Title 50, Code of Federal Regulations, Section 17.21(e) provided that it was unlawful to deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever, and in the course of a commercial activity, any endangered wildlife.

5. Title 50, Code of Federal Regulations, Section 17.21(f)(1) provided that it was unlawful to sell or offer for sale in interstate or foreign commerce any endangered wildlife.

6. Pursuant to the Endangered Species Act, the term "commercial activity" meant all activities of industry and trade, including, but not limited to, the buying or selling of commodities and activities conducted for the purpose of facilitating such buying and selling. Title 16, United States Code, Section 1532(2).

7. Title 50, Code of Federal Regulations, Section 17.3 provided that "industry or trade" in the definition of "commercial activity" in the Endangered Species Act meant the actual or intended transfer of wildlife or plants from one person to another person in the pursuit of gain or profit.

8. The Lacey Act, Title 16, United States Code, Section 3372, made it unlawful for a person to knowingly import, export, transport, sell, receive, acquire, or purchase wildlife, when in the exercise of due care the person should have known that the wildlife

2

was taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying federal law, treaty, or regulation, and to attempt to do so. Title 16, United States Code, Sections 3372(a)(1), (a)(4) and 3373(d)(2).

9. Pursuant to the Lacey Act, the term "wildlife" meant any wild animal, whether alive or dead, whether or not bred, hatched, or born in captivity, and included any part, product, egg, or offspring thereof. Title 16, United States Code, Section 3371(a). Pursuant to the Endangered Species Act, the term "fish or wildlife" meant any member of the animal kingdom and included any part, product, egg, or offspring thereof, or the dead body or parts thereof. Title 16, United States Code, Section 1532(8).

10. Pursuant to the Lacey Act, the term "transport" meant to move, convey, carry, or ship by any means, or to deliver or receive for the purpose of movement, conveyance, carriage, or shipment. Title 16, United States Code, Section 3371(k).

### B. The Conspiracy

11. Beginning on an unknown date, but not later than June 5, 2001, and continuing thereafter through on or about December 15, 2004, within the Middle District of Florida and elsewhere,

> RONALD S. SCHLOM
> and
> ROSEANN COOK-SCHLOM,

defendants herein, did knowingly, unlawfully, and willfully combine, conspire, confederate, and agree with each other, to commit the following offenses against the United States:

    a. to knowingly transport, sell, receive, and acquire wildlife, when in the exercise of due care the defendants should have known that said wildlife had been

transported and sold in violation of, and in a manner unlawful under the laws and regulations of the United States, specifically Title 16, United States Code, Sections 1538(a)(1)(E), (a)(1)(F) and Title 50, Code of Federal Regulations, Sections 17.21(e), (f)(1), all in violation of Title 16, United States Code, Sections 3372(a)(1), and 3373(d)(2).

b. to knowingly and unlawfully deliver, receive, transport, and ship, endangered species of wildlife in interstate and foreign commerce, by any means and in the course of a commercial activity, in violation of Title 16, United States Code, Sections 1538(a)(1)(E) and 1540(b).

c. to knowingly and unlawfully sell and offer for sale in interstate and foreign commerce endangered species of wildlife, in violation of Title 16, United States Code, Sections 1538(a)(1)(F) and 1540(b).

### C. Manner and Means

The manner and means used to accomplish the objects of the conspiracy included, among others, the following:

12. The defendants advertised for sale endangered species of wildlife on RCOOKCO.COM.

13. The defendants, both personally and through their business, sold endangered species of wildlife to customers throughout the United States as well as to customers in foreign countries.

14. The defendants caused the endangered species of wildlife to be transported and shipped to their customers and received by their customers who had purchased the wildlife.

15. The defendants, both personally and through their business, received and acquired endangered species of wildlife on consignment from customers throughout the United States. The defendants received a percentage commission of the dollar price at which the consigned endangered species of wildlife was sold through their business and internet website.

### D. Overt Acts

16. In furtherance of the conspiracy and to accomplish its objects, design and purposes, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1) On or about January 8, 2002, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin muff for $250.00 to Individual One. Schlom and Cook-Schlom caused the leopard skin muff to be transported and shipped in interstate commerce from Florida to Indiana.

2) On or about March 1, 2002, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin coat and hat for $3,000.00 to Individual Two. Schlom and Cook-Schlom caused the leopard skin coat and hat to be transported and shipped in interstate commerce from Florida to California.

3) On or about November 9, 2002, Ronald S. Schlom and Roseann Cook-Schlom sold a tiger skin rug for $4,000.00 to Individual Three. Schlom and Cook-Schlom caused the tiger skin rug to be transported and shipped in interstate commerce from Florida to Connecticut.

4) On or about January 3, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin belt for $200.00 to Individual Four. Schlom and Cook-Schlom caused the leopard skin belt to be transported and shipped in interstate commerce from Florida to Georgia.

5) On or about January 16, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin pillow for $525.00 to Individual Five. Schlom and Cook-Schlom caused the leopard skin pillow to be

transported and shipped in interstate commerce from Florida to New York.

6) On or about February 13, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold two leopard skins for $5,000.00 to Individual Six. Schlom and Cook-Schlom caused the leopard skins to be transported and shipped in interstate commerce from Florida to Illinois.

7) On or about July 24, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a jaguar skin for $2,000.00 to Individual Seven. Schlom and Cook-Schlom caused the jaguar skin to be transported and shipped in interstate commerce from Florida to Washington.

8) On or about September 2, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a jaguar cape for $1,350.00 to Individual Eight. Schlom and Cook-Schlom caused the jaguar cape to be transported and shipped in interstate commerce from Florida to Maryland.

9) On or about September 18, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold two leopard skin pillows for $1,050.00 to Individual Nine. Schlom and Cook-Schlom caused the leopard skin pillows to be transported and shipped in interstate commerce from Florida to New York.

10) On or about November 18, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold an ocelot coat for $2,500.00 to Individual Ten. Schlom and Cook-Schlom caused the ocelot coat to be transported and shipped in interstate commerce from Florida to New York.

11) On or about December 3, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard jacket for $1,500.00 to Individual Eleven. Schlom and Cook-Schlom caused the leopard jacket to be transported and shipped in interstate commerce from Florida to California.

12) On or about December 17, 2003, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard hat for $175.00 to Individual Twelve. Schlom and Cook-Schlom caused the leopard hat to be transported and shipped in interstate commerce from Florida to Missouri.

13) On or about February 7, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin muff and bag for $395.00 to Individual Thirteen. Schlom and Cook-Schlom caused the leopard skin muff and bag to be transported and shipped in interstate commerce from Florida to Colorado.

14) On or about March 5, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold two leopard pillows for $945.00 to Individual Fourteen. Schlom and Cook-Schlom caused the leopard skin pillows to be transported and shipped in interstate commerce from Florida to Texas.

15) On or about March 15, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold two jaguar skins for $825.00 to Individual Fifteen. Schlom and Cook-Schlom caused the jaguar skins to be transported and shipped in interstate commerce from Florida to New Jersey.

16) On or about March 31, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin for $2,250.00 to Individual Sixteen. Schlom and Cook-Schlom caused the leopard skin to be transported and shipped in interstate commerce from Florida to Colorado.

17) On or about August 3, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard coat for $1,875.00 to Individual Seventeen. Schlom and Cook-Schlom caused the leopard coat to be transported and shipped in interstate commerce from Florida to New York.

18) On or about September 21, 2004, Ronald S. Schlom and Roseann Cook-Schlom transported and shipped two leopard skins which had been sold to Individual Eighteen. Schlom and Cook-Schlom caused the leopard skins to be transported and shipped in interstate commerce from Florida to Illinois.

19) On or about November 15, 2004, Ronald S. Schlom and Roseann Cook-Schlom sold a leopard skin pillow for $475.00 to Individual Nineteen. Schlom and Cook-Schlom caused the leopard skin pillow to be transported and shipped in interstate commerce from Florida to California and received by Individual Nineteen on November 23, 2004.

20) On or about December 7, 2004, Ronald S. Schlom and Roseann Cook-Schlom offered the following items for sale in interstate commerce on the internet website RCOOKCO.COM: a full length ocelot fur coat, a leopard skin hat, and leopard skin pillows.

All in violation of Title 18, United States Code, Section 371.

A. BRIAN ALBRITTON
United States Attorney

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

By: _____ FOR
Georgiann G. Cerese
Senior Trial Attorney
Environmental Crimes Section
Environment & Natural Resources Division
United States Department of Justice

By: _____
Samuel D. Armstrong
Assistant United States Attorney
Chief, Ocala Division